## Christopher Zug, Appellant, *v.* City of Pittsburg.

*Road law—Jury—Sending jury to view premises.*

On the trial of an appeal from the report of a jury of view assessing damages for the change of grade of a street, it is not error to send the jury out to view the premises, if such action will enable them better to determine the merits of the varying opinions of witnesses, and if the jury are properly cautioned by the court as to what they should do, and a representative of each party attends them.

*Road law—Change of grade—Conflicting evidence—Province of court and jury.*

On the trial of an appeal from a report of a jury of view assessing damages and benefits from the change of grade of a street, where the opinion of the witnesses as to the difference between the value of the property before and after the change of grade is widely conflicting, the case is necessarily for the jury.

Argued Nov. 1, 1899. Appeal, No. 174, Oct. T., 1899, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., May T., 1892, No. 120, on verdict for defendant. Before Green, McCollum, Mitchell, Dean, Fell and Brown, JJ. Affirmed.

Appeal from road jury. Before McClung, J.

At the trial counsel for defendant stated that he desired the jury to go out and see the property of the plaintiff.

The Court: Gentlemen, the law requires that you should see the property if a party requests it, and it is very proper in almost every case. There are very few cases where the jury ought not to see property of this sort. You simply go out, however, for the purpose of better enabling you to understand the testimony given here, and to weigh the opinion as to values, and to weigh the value of the opinion as to what is necessary in order to put this property in proper shape. You will simply go out there and get information enough upon the ground to accomplish this purpose, not undertaking to try the case there. The testimony will be delivered after you come in. You will hear the testimony and get a fair understanding of the property as it was at the time the improvement was made, and what the nature of the improvement was, and by seeing the property you will then be able to understand the testimony delivered here to-morrow.

Counsel for plaintiff objected to the jury going out on the ground, for the reason that the transformation of the property is such that a view of it will mislead rather than help them.

The Court: It having been requested by the attorney for the city that the jury view the property, the objection is overruled. [1]

The court charged in part as follows:

[If you find that the property of Mr. Zug was worth as much afterward as before and no more, then you simply find a verdict for the defendant. If you find it was worth less, then you find a verdict in favor of the plaintiff for the amount of that diminution in value. If you find, however, that there was an increase in value, then you certify a balance in favor of the city in the amount of that increase. It would be the duty of the court to see that there was no more assessed to him than was necessary

to pay his share of the improvement. But I might say to you here that it seems to be conceded that you need not go higher in that certificate, if you certify a balance, than about $3,000; that is, although you might find that the benefit was $10,000 or $15,000, you need not go higher than $3,000. Of course if it was less than $3,000 you would certify that less amount.] [6]

[Again it is conceded that there was a considerable rise made in the grade of this street, and that there was filling done there. You are given the amount of that filling, and you are given testimony as to the cost of filling. That is not direct testimony for the purpose of enabling you to determine the damages here; it is only for the purpose of enabling you to test the value of these opinions and to ultimately find out what was the effect of this improvement upon that property. If the filling of the property cost $5,000, and the property was $5,000 better after it was filled, of course, the man was not damaged. If it was $10,000 better after the property was filled, he was not only not damaged, but he was benefited, and you might certify special benefits against him. It is only in some such light as this that this matter of the amount of filling on the lot is relevant. And I should say here, in view of the testimony that has been given, that you should not allow any man to speculate off of the city by recovering damages for expenses that he might put upon property which no reasonable man would put there. There has been a suggestion made as to what further filling it would take to put this property up above the street, as it was before. There has been testimony as to that. I admitted that testimony upon the supposition that some witness, at least, in the case, would suggest that that was the proper thing to do; but not only has no witness suggested that that would be a proper thing to do, that it would be anything but a waste of money, but it appears that although seven or eight years have elapsed, and although, under the circumstances, perhaps the owner could well have done it, the owner has not done that filling. Now, under those circumstances, it is for you to say whether it would be reasonable or sensible for any man to put that expense upon the property; and, of course, you cannot put into a man's pocket money of the general taxpayers for the purpose of enabling him to make expenditures which no reasonable man would make.] [7]

[In the present case, in considering it, you have the whole

matter before you. This is an appeal from the report of the board of viewers. And in determining this case, you must consider that the city has paid the cost of this improvement, and that Mr. Zug, or Mr. Zug's property, will not have to pay anything whatever for this improvement unless you certify a balance against him. If you find damages in his favor he then gets the street graded and paved for nothing, and gets these damages in addition. If you find simply a verdict for the defendant then he gets no damages, but he gets the property graded and paved and he pays nothing for it. You will understand that, gentlemen, it is sometimes misunderstood by jurors, and therefore I am specific in it, that you should consider the cost of grading and paving having been paid by the city, and you should now determine whether or not the city shall recover from him some portion of the cost of grading and paving, or whether in addition to having paid that which would otherwise be assessed to him, it shall also pay him damages. That is the question before you.] [8]

Certificate for defendant for $3,000 upon which judgment was entered. Plaintiff appealed.

*Errors assigned* were (1) in sending out the jury to view the premises; (6–8) above instructions, quoting them.

*M. A. Woodward,* for appellant.—It was error to send out the jury: Bare v. Hoffman, 79 Pa. 71; O'Brien v. Brown, 3 Clark, 115; Longaker v. Borough of Norristown, 4 Del. Co. Rep. 20.

The charge was unfairly favorable to the defendant's cause and prejudicial to the plaintiff's cause: Peirson v. Duncan, 162 Pa. 187; Heydrick v. Hutchinson, 165 Pa. 208; Lerch v. Bard, 177 Pa. 197; Herrington v. Guernsey Bros., 177 Pa. 175.

*T. D. Carnahan,* with him *Clarence Burleigh,* for appellee.

PER CURIAM, January 2, 1900:

It was not error to send the jury out to view the premises. They could understand the testimony far better, and could determine the merits of the varying opinion of witnesses as to the

value of the property, before and after the injury, with much more intelligence and satisfaction by seeing the property for themselves. They were properly cautioned by the court as to what they should do, and a representative of each party attended them. We think in view of the peculiar circumstances of the case it was a very proper direction by the court to send them out to view the premises.

The only question of a practical character before the jury was the difference between the value of the property before and after the change of grade. It was a question which was largely a matter of opinion among persons qualified to judge upon such a subject, and a considerable number of them were examined on each side. There was a very great conflict of opinion on this subject among the witnesses, and of course the whole matter had to be determined by the jury. We think they were properly instructed by the court below and we do not think the charge was misleading or unfair or inadequate. The action of the court upon the offers of testimony was without error. The assignments of error are all dismissed.

Judgment affirmed.